## Succession of Robert McAlpin.

14 617
46 430

The Articles 985 and 986 of the Code of Practice, prescribe the form in which a debt due by a succession, must be acknowledged by the administrator—*Quere:* Whether such acknowledgment can be made in any other form, to interrupt prescription.

APPEAL from the District Court of the parish of Natchitoches, *Chaplin,* J. *A. H. Pierson,* for plaintiff. *J. M. B. Tucker,* for opponents and appellants.

Merrick, C. J. This case is presented by an opposition to an administrator's account, wherein he had placed the appellee as a creditor for $848 for medical services.

The principal question presented by the case is the plea of prescription of three years.

The services were rendered from 8th of May, 1850, to 6th of June, 1853, the time of the death of the intestate.

The claim was not noticed at the time of filing the first account in July, 1855.

The second and final account was not filed, until 26th of March, 1859. The opponents maintain that prescription had intervened, and barred the claim between the death of the intestate and the filing of the last account, wherein the claim was acknowledged.

To show an interruption of prescription, the appellee calls our attention to the testimony of the administrator himself. He deposes, that :

" *Dr. Rainer* made his claim against the succession of *McAlpin,* known to witness, who is administrator of the estate, two or three months after *McAlpin's* death. The claim was not placed on the first tableau, because the account had been given to *Mr. Compere,* who did not give it to witness in time to put it on the first tableau, and *Rainer* thought it was already in the hands of the administrator."

On his cross-examination, he says :

" The claim of *Dr. Rainer* was put upon the tableau of witness, as administrator of the estate, because he, *Rainer,* was entitled to something, and that if too much was allowed, the heirs could oppose the claim. Witness states, that no other medical bill was presented to him but that of *Dr. Rainer,* and of the physician whom witness, as administrator, had himself employed. Witness, as administrator, has made no written acknowledgment since 1858 of the claim of *Dr. Rainer,* except by putting it on the rough sketch of a tableau which he kept for his own reference as he did with all others. Witness told *Dr. Rainer,* that he would place his claim on the tableau. Witness has received letters from lawyers and *Dr. Rainer,* requesting this account to be placed on the tableau. Witness answered none of the letters ; but told *Dr. Rainer,* that he would say nothing of an account which was not in his hands."

The rough sketch of a tableau, unless communicated to *Dr. Rainer* or some other person, or filed, could not be considered as the acknowledgment of the debt, and this appears to have been made since 1858.

If it be conceded, (which is a point we do not undertake to decide,) that the administrator can acknowledge a debt in any other form than prescribed by Arts.

78

985 and 986 of the Code of Practice, still we do not think that there has been that acknowledgment of the debt required to interrupt prescription. Suppose the administrator promised to place the claim on the tableau of distribution when it was presented to him in 1853, by the creditor, and again when it was acknowledged in 1858, or placed on the tableau filed in 1859, the only times at which it appears there were any conversations concerning this claim, the prescription of three years had run between the supposed acknowledgment in 1853, and the written acknowledgment in 1858. It appears to us that the plea must be maintained.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, so far as it allowed the said *Rainer* any sum whatever, and that the opposition to the claim of said *Rainer* be sustained ; and that said *Rainer* pay the costs of the appeal, and so much of the costs of the lower court as are occasioned by the opposition to his said claim against said succession.